## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATRICIA E. CRYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No.   CIV-11-949-M |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (TR. ___). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **AFFIRMED.**

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI alleging a disability beginning June 12, 2006 (TR. 12). The applications were denied on initial consideration and on reconsideration at the administrative level (TR. 12). Pursuant to Plaintiff's request, a

hearing *de novo* was held before an ALJ on December 2, 2009 (TR. 34-76). At the hearing, Plaintiff appeared with a non-attorney representative and testified in support of the applications (TR. 39-66, 91). A vocational expert (VE) also testified at the request of the ALJ (TR. 66-76). The ALJ issued her decision on May 20, 2010, finding that Plaintiff was not entitled to DIB or SSI (TR. 12-29). The Appeals Council denied the Plaintiff's request for review on June 30, 2011, and the decision of the ALJ became the final decision of the Commissioner (TR. 1-5).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *See Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment

for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## THE ADMINISTRATIVE DECISION

In addressing the Plaintiff's disability applications, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010 (TR. 14). The ALJ then followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity from her alleged onset date, June 12, 2006 (TR. 14). Proceeding to step two, the ALJ concluded that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD); carpal tunnel syndrome on the right, post release in 1991; depression; anxiety; and cannabis abuse (TR. 14). After thoroughly discussing the medical evidence, the ALJ found at step three that the Plaintiff did not have an impairment or combination of impairments which met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 20).

The ALJ next formulated Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, it has been found that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [t]he claimant can lift and/or carry and push and/or pull up to 20 pounds occasionally and 10 pounds frequently. She can sit for a total of six hours in an 8 hour work day, and stand and/or walk for a total of 2 hours in the work day, walking at a casual, but not fast pace. She must avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. She infrequently can climb stairs or ramps. The claimant has a moderate limitation in her ability to understand, remember and carry out detailed instructions, and has a moderate limitation in her ability to interact

appropriately with the general public

(TR. 22). At step four, the ALJ found that Plaintiff was able to perform her past relevant work (PRW) as a general office clerk (TR. 27).

In the alternative, the ALJ found at step five of the sequential evaluation process that Plaintiff could perform other jobs existing in significant numbers in the national economy such as envelope addresser or a paper weight tester (TR. 28).

Thus, at step four and alternatively, at step five of the sequential analysis the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB or SSI (TR. 28-29).

## ISSUES PRESENTED

Plaintiff challenges the Commissioner's decision claiming that (I) the ALJ erred in failing to properly weigh the medical source opinions; (II) the ALJ erred in failing to properly assess Plaintiff's RFC; (III) the ALJ erred in finding Plaintiff could work at steps four and five in that (A) the ALJ failed to apply the correct legal standards at step four; and (B) the ALJ failed to apply the correct legal standards at step five; and (IV) the ALJ failed to properly evaluate Plaintiff's credibility.

## ANALYSIS

### I. <u>The ALJ's Weighing of the Medical Source Opinions</u>

Plaintiff's first assignment of error is based on her contention that the ALJ erred in failing to properly weigh the medical opinions of her treating physicians. Specifically, Plaintiff contends that the ALJ failed to apply the correct legal standards in evaluating the medical source statement of Plaintiff's treating physician, Dr. Robert Jones, and the

4

mental medical source statement of Dr. G. Michael Strickland, Plaintiff's treating psychiatrist at the Jim Taliaferro Community Mental Health Center.

Social Security regulations require the ALJ to evaluate every medical opinion in the record, giving varying weight to each opinion "according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). In *Goatcher v. United States Dep't of Health & Human Services*, 52 F.3d 288 (10th Cir. 1995), the Tenth Circuit outlined factors which the ALJ must consider in determining the appropriate weight to give a medical opinion.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 290; 20 C.F.R. §§ 404.1527(c)(2)-(6); 416.927(c)(2)-(6).

Generally, a "treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations such as consultative examinations. . . ." *Id.* (quotation omitted). If an ALJ rejects a treating physician's opinion and relies instead on the opinion of another medical source, he must follow specific guidelines. *Id.* First, he must "articulate specific, legitimate reasons" for the rejection. *Id.* (quotation omitted). Second, he must "explain the weight" accorded the

opinion of an examining or nonexamining physician and "give good reasons in his written decision for the weight he gave to the treating physician's opinion." *Id*. In this case, the ALJ thoroughly discussed the medical evidence pertaining to Plaintiff's physical and mental impairments and gave sufficient reasons for the weight given to the medical source opinions of Plaintiff's treating physicians.

    **A.**   **Dr. Jones' Medical Source Statement**

Plaintiff contends that the ALJ erred in giving Dr. Jones' opinion only "very moderate weight" and in rejecting the portion of Dr. Jones' medical source statement stating that Plaintiff suffers from chronic low back pain. The ALJ noted that Dr. Jones' statement regarding Plaintiff's alleged back pain seemed to be based "only on the claimant's report and his finding of paravertebral spasms" (TR. 16). Plaintiff further contends that the ALJ erred in failing to recontact Dr. Jones for more information before determining that his reports were inconsistent with the information in his treatment notes. Plaintiff urges that recontacting Dr. Jones was a necessary prerequisite to affording Dr. Jones' opinion "only a very moderate amount of weight" (TR. 25).

But Dr. Jones' medical records, as a whole, do not support Plaintiff's claim that she is disabled by chronic back pain. Dr. Jones first attended Plaintiff on July 26, 2006, as a new patient. His initial diagnoses were nicotine dependence and COPD (TR. 204). Plaintiff received adjustments to her medication by phone on August 7, 2006, and August 15, 2006 (TR. 204). At her next appointment on August 28, 2006, Dr. Jones addressed Plaintiff's anxiety and continued use of tobacco. Dr. Jones switched her anxiety medication from Xanax to Klonopin and increased her daily dosage of Lexapro.

6

He also advised Plaintiff to quit smoking (TR. 203). On October 16, 2006, Dr. Jones again adjusted Plaintiff's antianxiety medication and assessed her with COPD, nicotine dependence, and chronic anxiety (TR. 202).

Plaintiff was treated with antibiotics for an infection just before she was seen on June 7, 2007, for acute bronchitis. Dr. Jones prescribed the antidepressant Wellbutrin to help her quit smoking. On July 5, 2007, Dr. Jones instructed Plaintiff to increase her daily dose of Zoloft for two weeks and gave her a prescription for Lexapro to fill if her depression and anxiety did not improve (TR. 201). Dr. Jones again adjusted Plaintiff's medications on September 5, 2007, and ordered a chest X-ray (TR. 201). At a follow-up appointment on October 5, 2007, Dr. Jones stated that the chest X-ray "revealed severe COPD and emphysema." He adjusted her medications and assessed her with "Severe COPD," "Menopausal syndrome, on Estrogen replacement therapy," and "Chronic Anxiety" (TR. 200). On December 6, 2007, Dr. Jones gave Plaintiff a prescription for Combivent, an inhaler (TR. 199, 268).

A month later, on January 8, 2008, Dr. Jones completed a "Treating Physician Mental Functional Assessment Questionnaire." He noted that he was treating Plaintiff for depression, but indicated that her mental condition did not impose more than minimal limitations (TR. 198). On February 7, 2008, and May 8, 2008, Plaintiff was seen for follow up visits (TR. 267-268). Plaintiff sought treatment for chest pain, pleuritic in nature, on May 20, 2008. She was running a low grade fever (TR. 266).

Plaintiff returned to Dr. Jones on February 26, 2009, for a follow-up appointment and a refill of Naprosyn, which Plaintiff had been taking for shoulder pain (TR. 356).

This time, Dr. Jones assessed COPD, chronic depression and nicotine dependence. On June 5, 2009, Dr. Jones prescribed Lortab, Zoloft, Premarin, Klonopin and Flexeril (TR. 356). On October 28, 2009, Plaintiff told Dr. Jones that she was trying to get social security benefits.  For the first time, she complained to Dr. Jones about low back pain:

> Seen for follow-up. She has contacted attorneys in Enid about getting some Social Security. She suffers from bilateral carpal tunnel syndrome, chronic low back pain and severe pulmonary emphysema… She is having some headaches[,] and I placed her on Elavil 10mgs at h.s. She has rather severe COPD. She has about a one block tolerance before she has to rest.  She can stand only about two hours and sit about four hours.  She has not worked since 2005. She quit both cooking and secretarial jobs at that time. She had carpal tunnel surgery on the right in 1991… She has low back pain with paravertebral spasms

(TR. 355). The same day, Dr. Jones completed the Medical Source Statement at issue in this case (TR. 351-354). Dr. Jones identified Plaintiff's diagnoses as severe COPD, low back pain, bilateral carpal tunnel syndrome, right greater than left, and stated her prognosis was poor.  He identified her symptoms as shortness of breath, right arm and hand pain and lower back pain. He stated that the "clinical findings and objective signs" consisted of "tender LS" (lumbar spine) and "CTS 1991" (carpal tunnel syndrome).  He further identified low back pain with standing, exertional dyspnea and right arm pain with use (TR. 351). Dr. Jones stated his opinion that Plaintiff could stand and/or walk about two hours in an eight-hour working day and sit about four hours in an eight-hour working day (TR. 352).

The ALJ noted that Plaintiff had never reported such severe limitations until her disability claims had been denied at the initial and reconsideration stages (TR. 24).  In

8

fact, during the three years of her treatment, Plaintiff had apparently never mentioned the alleged chronic back pain to Dr. Jones, and there is no evidence in the record to suggest she saw a different doctor for back pain.

The ALJ further noted that the record contains "no objective radiological studies... to support the claimant's alleged low back pain, or any limitations regarding low back pain, or her inability to sit more than 4 hours in a work day" (TR. 25). Plaintiff contends, however, that Dr. Jones "recorded his observations of low back pain with paravertebral muscle spasms." Plaintiff argues that Dr. Jones "observations" constituted "objective medical evidence" (See Plaintiff's Opening Brief at page 8).

As to her allegedly severe carpal tunnel syndrome, Plaintiff was examined by Dr. Sharad S. Swami, a consultative examiner, on April 2, 2008. Dr. Swami noted that Plaintiff complained of numbness and tingling in both hands. He noted her past medical history as including "COPD, Anxiety/Depression, and Carpal Tunnel Syndrome –bilateral" (TR. 236). On examination, however, Dr. Swami noted the lack of Tinel's sign and negative results from Phenel's maneuver (tests used to verify carpal tunnel syndrome) (TR. 237). Although the record is not entirely clear, it appears that Dr. Swami found Plaintiff's range of motion to be within normal limits and straight leg raising to be negative for pain (TR. 235). *See also*, Physical Residual Functional Capacity Assessment (TR. 207-214).

The ALJ's position regarding Plaintiff's claim of disabling lower back pain and the weight to be afforded Dr. Jones' medical source opinion is well supported. Plaintiff's new complaints of lower back pain were temporally related to the denial of her

9

applications for DIB and SSI at the agency level. Moreover, what evidence there is of lower back pain is based solely on Plaintiff's reported pain and Dr. Jones' perception of tenderness in her lumbar spine. It is far from clear whether Dr. Jones actually "observed" paravertebral muscle spasms or simply diagnosed muscle spasms based on Plaintiff's description of her alleged pain. The ALJ considered the proper factors in determining what weight to give Dr. Jones' medical opinion, in so far as it is related to Plaintiff's complaints of lower back pain and carpal tunnel syndrome. Thus, the ALJ's decision is based on substantial evidence.

Plaintiff also argues that the ALJ had a duty to recontact Dr. Jones to clear up any questions she might have had regarding objective evidence supporting Plaintiff's claims of lower back pain. But under the circumstances in this case, the ALJ had no duty to recontact Dr. Jones.

Generally, under the governing regulations, the Commissioner must recontact a treating physician when the information the doctor provides is "inadequate . . . to determine whether [the claimant is] disabled." 20 C.F.R. §§ 404.1520b(c)(1); 416.920b(c)(1). *See also, White v. Barnhart,* 287 F.3d 903, 908 (10th Cir. 2001). Nevertheless, it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician, but rather the inadequacy of the evidence the ALJ receives from the claimant's treating physician. *Id.* In this case, the ALJ simply rejected the Dr. Jones' statements regarding Plaintiff's back pain because those statements were insufficiently supported by the record as a whole. The ALJ concluded that Dr. Jones' opinion rested heavily on Plaintiff's subjective assertions of pain as

opposed to objective medical evidence.  The ALJ's finding was at least partially based on her assessment of Plaintiff's credibility. As discussed in further detail below, the ALJ's credibility analysis was both thorough and based on substantial evidence.

Because the ALJ applied the correct legal standards to her assessment of Dr. Jones' Medical Source Statement, the ALJ's decision should be affirmed on this issue.

### B. Dr. Strickland's Mental Medical Source Statement

Plaintiff contends that the ALJ failed to apply the proper legal standards in evaluating Dr. Gill Strickland's Mental Medical Source Statement to which she assigned "little weight" (TR. 26)

Plaintiff began seeking mental health treatment at the Jim Taliaferro Community Mental Health Center in September 2008, for medication management only, after three years of receiving medication for her mental impairments from Dr. Jones (TR. 320-350, 357-365). She reported that she has depression and panic attacks. She also stated she was "trying to get SSDI /or SSI" (TR. 359).  Her thought process was assessed as clear and coherent with coherent, goal-directed speech (TR. 359).  Her Global Assessment of Functioning (GAF) score was 55[1] (TR. 359). She did not receive any supportive psychotherapy at any of her six appointments with Dr. Strickland (TR. 320-350, 357-360).

---

[1] A global assessment of functioning (GAF) score "is a subjective determination based on a scale of 1 to 100 of the clinician's judgment of the individual's overall level of functioning." *Salazar v. Barnhart*, 468 F.3d 615, 624 n. 4 (10th Cir.2006) (quotation omitted). A GAF of 51–60 indicates "[m]oderate symptoms" or "moderate difficulty." *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32–34 (4th ed. 2000).

11

Despite Plaintiff's consistent GAF score of 55, which indicates moderate impairments, throughout her treatment at the Jim Taliaferro Community Mental Health Center, Dr. Strickland noted several "marked" restrictions, allegedly caused by mental impairments, in his Mental Medical Source Statement. The marked restrictions were in the areas of sustained concentration and persistence, social interaction, and adaptation (TR. 362-364).

Dr. Strickland's opinion of Plaintiff's mental impairments is more restrictive than any other assessment of her mental limitations in the record, including that of Dr. Robert Danaher, a clinical psychologist who performed a mental status examination at the request of the agency. Dr. Danaher completed a five page assessment describing the testing he performed to reach his conclusions regarding Plaintiff's mental impairments (TR. 241-245). Based on his examination and Plaintiff's medical records, Dr. Danaher diagnosed Plaintiff with Panic Disorder with Agoraphobia and Major Depressive Disorder, Recurrent–moderate to severe (TR. 245).

As discussed above, Dr. Jones, though not a psychiatrist, completed a Treating Physician Mental Functional Assessment Questionnaire in which he opined that Plaintiff's mental condition would cause no more than minimal limitations (TR. 198).

In completing the Psychiatric Review Technique form, Cynthia Kampschaefer, an agency psychologist, found Plaintiff's functional limitations to be no worse than moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace (TR. 257). In the corresponding Mental Residual Functional Capacity Assessment, Kampschaefer concluded that Plaintiff "can do simple and some

complex and detailed tasks;" that she is "able to follow one and two step instructions;" that her "adaptive functions [are] intact;" and that she can relate to others only on an "incidental basis due to anxiety symptoms" (TR. 263).

The ALJ recognized that Dr. Strickland was a "treating psychiatrist," yet she afforded his Mental Medical Source Statement "little weight" for the following reasons:

> First, he only saw the claimant 6 times from September 22, 2008, through November 9, 2009, a period of over 13 months. Second, he regularly reported the claimant never needed hospitalization, he found no need to see her for psychotherapy, or to see her more than once every 3 months. Third, Dr. Strickland regularly reported her findings were within normal limits. Fourth, he only once listed the claimant's diagnoses as including generalized anxiety disorder or depression, only reporting anxiety after her November 9, 2009 visit, and "likely depression" on November 9, 2009. That statement contradicts his opinion written the same day, on which he reported on the Medical Source Statement that her diagnoses included depression and anxiety

(TR. 26-27). Contrary to Plaintiff's assertions, the weight the ALJ assigned to Dr. Strickland's Mental Medical Source Statement is based on substantial evidence. Moreover, the factors the ALJ considered include many of the factors set forth in the regulations. *See* Discussion *supra* at 5. The ALJ did not err as a matter of law in applying the factors she considered in determining the weight to afford Dr. Strickland's opinion.

## II. **The ALJ's RFC Assessment**

Plaintiff contends that the ALJ erred in failing to include any limitations in the use of her hands in the RFC. According to Plaintiff, when the ALJ identified "carpal tunnel

13

syndrome on the right, post release in 1991" as a severe impairment at step two, she erred in failing to include limitations in the RFC on Plaintiff's use of her hands.

The showing a claimant must make at step two of the sequential evaluation is *de minimis*. *See Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008). Here, Plaintiff alleged that she had undergone nerve release surgery to relieve the pain from carpal tunnel syndrome in 1991, but that the surgery had given her relief from pain for only eight months. The ALJ cited inconsistent statements that Plaintiff made regarding the amount of time she allegedly wears a wrist brace for carpal tunnel pain, and noted that the amount of time increased, according to Plaintiff, shortly after the agency denied benefits (TR. 15). The ALJ apparently discounted Plaintiff's reported pain based on Plaintiff's credibility, even though the ALJ found that Plaintiff made the step two *de minimis* showing. The ALJ's rejection of Plaintiff's subjective complaints of hand pain is supported by the medical evidence. In his consultative examination, Dr. Swami noted the absence of Tinel's sign and Phenel's sign, both of which, when present, indicate that the nerves passing through the carpal tunnel of the wrist are impinged (TR. 237). Accordingly, the ALJ's RFC determination is supported by substantial evidence.

### III.   The ALJ's Step Four and Five Analysis

Plaintiff also contends that the ALJ erred at both steps four and five of the sequential analysis in finding that she could perform her PRW as well as other jobs existing in significant numbers in the national economy.

## A.     <u>The ALJ's Step Four Analysis</u>

As Plaintiff correctly notes, the analysis at step four requires an ALJ to make findings in three areas of concern.  First, the ALJ must assess the claimant's RFC. Next, the ALJ must determine the physical and mental demands of the claimant's PRW. Finally, the ALJ must determine whether the claimant's RFC would allow a return to the PRW. *See Doyal v. Barnhart*, 331 F.3d at 760. As discussed above, the ALJ's RFC assessment is based on substantial evidence.

The ALJ questioned Plaintiff carefully at the administrative hearing to determine the true nature of her PRW which Plaintiff initially described as working in "the office trying to help [the proprietor] do, like, her hot checks, and stuff like that" (TR. 63). In response to the ALJ's questioning, Plaintiff stated that she "would call some people, and like their hot checks and stuff.  And then if they didn't come pick them up, then I would fill out the little paper to send them to the [District Attorney's] office" (TR. 65). She further stated that she did not do any filing, or paperwork, other than filling in the form to send a complaint to the district attorney (TR. 66). The VE identified the closest section of the Dictionary of Occupational Titles as § 205.367-042, "Office Clerk," a sedentary job with a reasoning level of 3 (TR. 69).  In answer to the ALJ's hypothetical question describing a younger person with an eighth grade education able to work at the light exertional capacity who could infrequently climb stairs and who needed to avoid all exposure to fumes, odors, dust, gasses, and poor ventilation, the VE testified that such a person could perform Plaintiff's PRW as an office clerk (TR. 70). The ALJ

properly relied on the testimony of the VE in determining that Plaintiff's RFC would allow her to return to her PRW.

### B.     The ALJ's Step Five Analysis

The ALJ also asked the VE if there were other jobs available in significant numbers that a hypothetical person with the same hypothetical RFC could perform. The VE identified merchandise marker, a light job with a skill level of 2, and a garment steamer, a light job with a skill level of 2. In answer to the ALJ's hypothetical question about a person who could stand and walk only two hours in a work day, the VE identified the occupations of envelope addresser, a sedentary job with a skill level of 2, call out operator, a sedentary job with a skill level of 2, and paper weight tester, a sedentary job with a skill level of 2 (TR. 72-73). When the ALJ changed the hypothetical question to include moderate or marked limitations in dealing with the public, the VE stated that the only job affected would be that of call out operator, which requires dealing with the public (TR. 74).

The ALJ's step four and alternative step five findings are based on substantial evidence and absent of legal error.

### IV.    The ALJ's Credibility Analysis

In *Wilson v.* Astrue, 602 F.3d 1136 (10th Cir. 2010), the Tenth Circuit Court of Appeals restated the salient points a court must consider when reviewing credibility determinations:

> Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary*

> of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston [v. Bowen], 838 F.2d 1125, 1133 [(10th Cir. 1988)] (footnote omitted); see also Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical); Williams [ex rel.] Williams v. Bowen, 859 F.2d 255, 261 (2d Cir.1988) ("failure to make credibility findings regarding . . . critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support [her] conclusion that claimant is not under a disability")

Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010) (quoting Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)). The Court also restated the process an ALJ should use in evaluating a claimant's subjective allegations of pain:

> The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Id. at 1144-1145 (internal quotations and citations omitted). In determining whether a claimant's subjective complaints are credible, the ALJ should consider such evidence as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

17

*Id.* at 1145 (internal quotation and citations omitted).

There is no doubt that some of the evidence presented by Plaintiff was not entirely credible. Throughout her decision, the ALJ commented on subjective measures of Plaintiff's credibility. For example, the ALJ stated that the onset date was "somewhat in doubt" because Plaintiff had not worked regularly for several years before 2006 (TR. 14). At step two, the ALJ concluded that Plaintiff had made the *de minimis* showing that she had carpal tunnel syndrome in her right hand, post release surgery in 1991, but then rejected Plaintiff's complaints of disabling hand pain because of inconsistent statements regarding the use of a wrist brace in two function reports only seven or eight months apart (TR.14-15). The ALJ also noted that the greater restrictions reported by Plaintiff in the August 2008 report were not supported by the medical evidence and that the "main difference between January and August 2008 was that Ms. Cryer's claim for disability benefits had been denied in June 2008." The ALJ stated that these inconsistent reports "cast substantial doubt on [Plaintiff's] credibility" (TR. 23).

The ALJ also noted that Plaintiff had been content with getting her mental health medication from Dr. Jones until her applications were denied initially and upon reconsideration. Twelve days later, she sought treatment at the Jim Taliaferro Community Mental Health Center. The ALJ found the timing of her appointment "raised questions about the claimant's veracity in regard to what she told the clinicians at the Mental Health Center" (TR. 18). Although the Plaintiff consistently admitted using

18

marijuana, the ALJ noted that she at times stated she used this drug to help her appetite, and at other times stated that it relaxed her (TR. 19).

In considering Plaintiff's credibility regarding the severity of her symptoms, the ALJ followed the three-step approach described in *Luna*. She first determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms and that the impairments did cause some symptoms. But the ALJ also found that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they conflicted with the RFC (TR. 24). The ALJ discussed the relevant medical evidence, the opinions of treating physicians as well as agency physicians, and the objective signs and clinical findings upon which she based her credibility findings. Because the ALJ's credibility findings are supported by substantial evidence in the record, this assignment of error does not require remand.

In sum, the ALJ's unfavorable decision is supported by substantial evidence and is free of legal error.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **September 4, 2012**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 13th day of August, 2012.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE